# United States Court of Appeals for the Federal Circuit

2006-1227

FOREST LABORATORIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Frederic D. Van Arnam, Jr., Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellant. With him on the brief were James S. O'Kelly and Eric W. Lander.

Amy M. Rubin, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were David D. Keisler, Assistant Attorney General; David M. Cohen, Director, of Washington, DC., and Barbara S. William, Attorney in charge, of New York, New York. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2006-1227

FOREST LABORATORIES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  January 23, 2007
_____

Before LOURIE, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

This case involves the authority of the United States Bureau of Customs and Border Protection ("Customs") to alter tariff rates for merchandise that is properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS"). Forest Laboratories, Inc. ("Forest") appeals from the decision of the United States Court of International Trade granting the government's motion for judgment on the pleadings and denying Forest's motion for judgment on the pleadings by finding that Forest is not entitled to duty-free importation of the pharmaceutical product hydrated hydroxypropyl methylcellulose ("HPMC").  Because we hold that Commerce does not have authority to

change the tariff duty assessed on properly classified merchandise under the HTSUS, we affirm the decision of the Court of International Trade.

## I. BACKGROUND

The imported merchandise that is the subject of this case is HPMC, which has the Chemical Abstract Service ("CAS") registration number 9004-65-3. On February 17, 1999, Forest submitted a letter to Customs asking Customs to "confirm the proper classification" of HPMC under the HTSUS.[1] In its letter, Forest stated that the proper classification of HPMC is "heading HTSUS 3912.39.00, at the duty rate of 4.2% ad valorem." In response, on March 17, 1999, Customs issued ruling letter NY D88210 in which it agreed with Forest that HPMC was classified in HTSUS subheading 3912.39.00. The pertinent text of the ruling letter reads:

> The applicable subheading for the product [HPMC] will be 3912.39.0000, Harmonized Tariff Schedule of the United States (HTS), which provides for: "Cellulose and its chemical derivatives, not elsewhere specified or included, in primary forms: Cellulose ethers: Other." <u>Pursuant to General Note 13, HTSUSA, the rate of duty will be free</u>.

NY Ruling Letter D88210. Thus, although both Forest and Customs agreed that the HPMC was properly classified under HTSUS 3912.39.00, Forest stated that the duty rate was 4.2% ad valorem, while Customs said that the HPMC was duty free. The key dispute in this appeal relates to Customs' statement in this ruling letter that HPMC qualified for duty free treatment "[p]ursuant to General Note 13, HTSUSA."

---

[1] At the time this case was filed, Customs was known as the United States Customs Service and was under the jurisdiction of the United States Treasury Department. With the passage of the Homeland Security Act of 2002, the U.S. Customs Service on March 1, 2003 was divided and integrated into the United States Customs and Border Protection and the United States Immigration and Customs Enforcement. Customs is now a part of the United States Department of Homeland Security.

2006-1227

General Note 13, HTSUS, provides in part:

Pharmaceutical Products. Whenever a rate of duty of "Free" followed by the symbol "K" in parentheses appears in the "Special" subcolumn for a heading or subheading, any product (by whatever name known) classifiable in such provision which is the product of a country eligible for tariff treatment under column 1 shall be entered free of duty, provided that such product is included in the pharmaceutical appendix to the tariff schedule.

(Emphasis added). HPMC was listed in the Pharmaceutical Appendix until 1997 when it was removed by Presidential proclamation. Forest does not dispute that HPMC is not "listed" in the Pharmaceutical Appendix to the tariff schedule and was not 'listed' in the Pharmaceutical Appendix at the time it imported HPMC. Rather, Forest attempts to assert that Customs' statement in NY D88210 that Forest's HPMC qualified for duty free treatment was Customs telling Forest that it would include HPMC in the Pharmaceutical Appendix for Forest's HPMC entries made pursuant to NY D88210.

Forest subsequently imported HPMC in 2000 and 2001. Customs officials at the port of entry advised Forest that the imported HPMC was not in the Pharmaceutical Appendix and would be liquidated under subheading 3912.39.00 at a duty rate of 4.2% ad valorem. After liquidation, Forest protested the duty assessment, claiming that the "duty free" language in NY D88210 was binding on Customs and could not be revoked or modified without following the notice and comment requirements in 19 U.S.C. § 1625(c), even though in its classification request to Customs, Forest indicated that it

3

was aware of the proper tariff duty for the statutory tariff subheading 3912.39.00.[2]

Forest's protest was referred to Customs Headquarters pursuant to 19 C.F.R. pt. 174 (2001). On October 2, 2001, Customs Headquarters issued its decision in HQ 965280. Customs Headquarters determined, and Forest does not contest, that Customs correctly classified HPMC under the statutory tariff subheading 3912.39.00. However, Customs Headquarters denied Forest's duty assessment protest because HPMC was not listed in the Pharmaceutical Appendix as required by General Note 13, HTSUS and thus was not entitled to duty-free treatment. Customs Headquarters concluded that the reference to General Note 13 and the resultant duty-free treatment in NY D88210 was due to "clerical error":

> [P]ursuant to General Note 13, HTSUS, HPMC, CAS # 9004-65-3, which is not listed in the Appendix, is not entitled to duty free treatment . . . [and] a clerical error was made with regard to the CAS number, resulting in an incorrect statement in NY D88210, that the goods were duty-free. Correction of a clerical error is exempted from the notice, publication, and comment procedures otherwise required for modification and/or revocations in 19 U.S.C. § 1625(c).

---

[2]    Title 19 U.S.C. § 1625(c) reads:

(c) Modification and revocation

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretative ruling or decision which has been in effect for at least 60 days . . .

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the  closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

4

HQ 965280.

Forest commenced an action in the Court of International Trade challenging the denial of its protest, moving for judgment on the pleadings under Court of International Trade Rule 12(c) on the ground that there was no genuine issue of material fact.[3] The government also moved for judgment on the pleadings, arguing that its liquidation at 4.2% ad valorem was correct.

On December 6, 2005, the Court of International Trade issued its decision denying Forest's motion for judgment on the pleadings and granting the government's cross-motion for judgment on the pleadings and dismissed the action. The court concluded that Forest's HPMC had been classified correctly and that it was not entitled to duty-free entry. The court found that NY D88210 had correctly determined that the HTSUS provision for HPMC was 3912.39.00 and that Customs had liquidated Forest's HPMC importations under the correct provision. The court also found that at the time NY D88210 issued, HPMC was not listed in the Pharmaceutical Appendix as required for duty free treatment under General Note 13, HTSUS. Thus, the HPMC imported by Forest was subject to a duty rate of 4.2% ad valorem under HTSUS 3912.39.00. The court further found that Customs' "duty free" rate in NY D88210 was a "misstatement" because Customs has no authority to impose a duty rate other than the one authorized by Congress under HTSUS.

In its well-reasoned opinion, the court also rejected Forest's argument that the error in NY D88210 is the type of error that can only be corrected after notice and

---

[3] CIT Rule 12(c), regarding judgments on the pleadings, is identical to Rule 12(c) of the Federal Rules of Civil Procedure.

5

comment in accordance with 19 U.S.C. § 1625(c). The court found that Customs is not authorized to amend duty rates. Therefore, Customs did not modify or revoke "a prior interpretive ruling or decision" when Customs assessed the duty rate imposed on the HPMC by the HTSUS instead of at the duty rate misstated as "free" in NY D88210. Indeed, Customs is authorized to classify imported merchandise, but this case is not a case of alleged mis-classification of imported merchandise. Thus, the court concluded that the liquidation of Forest's HPMC at 4.2% ad valorem served to correct the misstated rate for HPMC in NY D88210 and that no notice was required to make that correction because Customs had no legal authority to impose any import duty rate other than the rate mandated in the HTSUS, which was 4.2% ad valorem.

Forest argues that Customs' classification and duty free status is a legal determination that requires the notice and comment procedures of § 1625(c) before being modified or changed. As support, Forest points to General Note 3 of the HTSUS, which explains that the special duty free rate is available when all the "legal requirements for eligibility" are met. HTSUS General Note 3(a)(iii) (1999). Forest also argues that because classification is done by "whatever name known," Customs is doing more than just looking at the Pharmaceutical Appendix list. Therefore, according to Forest, because the duty free status of the HPMC under NY D88210 was a legal determination, Customs is bound to follow it unless it is modified through the procedures of § 1625(c). Further, Forest asserts that a legal determination can never be a clerical error.

The government responds that § 1625(c) does not apply because Customs cannot adopt a position that is contrary to Congress's clearly expressed intent. The

6

government also argues that whether HPMC is listed in the Pharmaceutical Appendix is a question of fact and that factual errors do not form part of an official position. See 19 C.F.R. § 177.9(b) ("The application of a ruling letter by a Customs Service field office to the transaction to which it is purported to relate is subject to the verification of the facts incorporated in the ruling letter . . . and the satisfaction of any conditions on which the ruling was based . . . ."). Alternatively, the government argues that Customs' mistake was a clerical error, which is a statutory exception to § 1625(c).

The Court of International Trade entered final judgment on December 6, 2005, and Forest appealed to this court. Forest reiterates its argument that Customs is bound by the ruling in NY D88210 to liquidate Forest's 2000 and 2001 entries of HPMC as duty free. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5).

We review a judgment on the pleadings from the Court of International Trade de novo. See N.Z. Lamb Co., v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994). Judgment on the pleadings is appropriate where there are no material facts in dispute and the party is entitled to judgment as a matter of law. Id.

## II. DISCUSSION

The central issue in this appeal is whether Customs has the legal authority to change the statutory HTSUS tariff duty for otherwise properly classified merchandise under HTSUS.[4] Forest argues that Customs has the authority to change the tariff duty rate set by Congress in the HTSUS for HPMC from 4.2% ad valorem to duty free for

---

[4] The HTSUS was enacted by Congress and made effective on January 1, 1989, replacing the former Tariff Schedules of the United States. The HTSUS is therefore a statute and is subject to statutory interpretation, which is a question of law that we review de novo. See Bauerhin Tech. v. United States, 110 F.3d 774, 776 (Fed. Cir. 1997).

2006-1227

Forest's HPMC entries made in 2000-2001. Forest premises this conclusion on the basis that Customs is bound by its ruling letter NY D88210 to liquidate Forest's HPMC entries as duty free because Customs erroneously stated in the ruling letter that pursuant to General Note 13, HSTUS HPMC was still listed in the Pharmaceutical Appendix giving it duty free status.

Forest does not challenge the classification of the imported HPMC in NY D88210 under the tariff statute. Both parties agree that the correct tariff provision for HPMC is subheading 3912.39.00 HTSUS, which requires a tariff duty of 4.2% ad valorem. The only dispute between the parties is the appropriate duty rate required under the HTSUS for imported merchandise that is properly classified under HTSUS. Forest contends that Customs is bound by the statement it made in its ruling letter NY D88210 that the rate of HPMC would be duty free "[p]ursuant to General Note 13, HTSUS."

General Note 13 is part of the HTSUS and is therefore a statutory provision enacted by Congress. United States International Trade Commission, Preface to the 12th Edition HTSUS, 2 (2000) ("The legal text of the [HTSUS] consists of . . . the General Notes; . . . [and] the Pharmaceutical Appendix"). Pursuant to this statutory provision, General Note 13 permits duty free treatment of certain pharmaceutical products if three requirements are met: 1) the subheading that classifies the merchandise is followed by a "K" in the Special column; 2) the country of origin is eligible for column 1 treatment; and 3) the merchandise is listed in the Pharmaceutical Appendix of the tariff schedule. Both parties agree that Forest's HPMC entries meet the first two requirements of General Note 13. The parties dispute whether the third requirement is met, because Forest attempts to assert that Customs' statement in NY

8

D88210 that Forest's HPMC qualified for duty free treatment was Customs telling Forest that it would include HPMC in the Pharmaceutical Appendix for Forest's HPMC entries made pursuant to NY D88210.

We conclude that Forest's HPMC entries do not meet the third requirement in General Note 13 because HPMC is not listed in the Pharmaceutical Appendix of the HTSUS. The Pharmaceutical Appendix is a statutory provision included as part of the tariff schedule, and it is clear that HPMC is not listed in the Pharmaceutical Appendix.[5] HPMC was in fact listed in the Pharmaceutical Appendix until it was removed in 1997, three years before Forest entered the HPMC. Nevertheless, Forest contends that even though HPMC is not "listed" in the Pharmaceutical Appendix, Customs made a legal determination to which Customs is bound by incorrectly stating the HTSUS tariff duty in NY D88210 that HPMC qualified for duty free treatment.

We have previously affirmed the Court of International Trade when it found that Customs has no authority to alter or amend the duty rates of the tariff schedule because the duty rates are part of the tariff statute enacted by Congress:

> Customs does not set the duty rates. Only Congress is empowered to lay and collect taxes (including duties). Constitution of the U.S., Art. I, Sect. 8. Congress approved the duty rates in the tariff statute and Customs simply applies the rates to goods.

Jewelpak Corp. v. United States, 20 Ct. Int'l Trade 1402, 1409 (Ct. Int'l Trade 1996), aff'd, 297 F.3d 1326 (Fed. Cir. 2002) ("Accordingly, we affirm in all respects the decision of the Court of International Trade").

---

[5] As part of the tariff schedule, the Pharmaceutical Appendix includes three tables. Table 1 includes a list of pharmaceutical products. Table 2 provides a list of the hydrated forms of the products listed in Table 1. Table 3 identifies other products that may be entered duty free under General Note 13. HPMC is not listed in any of the three tables.

9

We now specifically hold that Customs has no authority to change the statutorily mandated tariff rates for merchandise that is properly classified under HTSUS. Thus, because Forest does not contest the classification of its HPMC under the tariff statute and because the current tariff statute requires HPMC to be assessed a duty rate of 4.2% ad valorem, Forest's HPMC entries of 2000 and 2001 are not free of duty. Because Customs cannot change the duty rates set by Congress under the tariff statute and because HPMC was not listed in the Pharmaceutical Appendix when Forest entered its HPMC, Customs properly liquidated Forest's HPMC entries of 2000 and 2001 at the duty rate of 4.2% ad valorem. Under these circumstances, Customs' liquidation of the entries at the duty rate of 4.2% ad valorem did not constitute a modification or revocation of a prior interpretive ruling so as to trigger the requirements of § 1625(c). Because Customs could not act outside of its statutory authority, it could not properly issue and adopt the "position" Forest asserts Customs promulgated in NY D88210, and the subsequent liquidation of the entries at the duty rate of 4.2% ad valorem did not represent a modification or revocation of an official Customs position.[6] For these reasons, we affirm the Court of International Trade.

AFFIRMED

No costs.

---

[6] In view of our disposition of the case, it is not necessary for us to address the government's alternative argument that NY D88210's assignment of a duty rate of free for Forest's HPMC was a clerical error.